UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:25-cv-01002

| | |
|---|---|
| ELLEN RIGGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) COMPLAINT and DEMAND FOR JURY |
| | ) TRIAL |
| UNION DAY SCHOOL, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff, Ellen Riggs ("Riggs"), by and through counsel, brings this action for violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, against Union Day School, Inc. ("UDS"). Riggs additionally brings a claim under North Carolina common law for wrongful discharge in violation of public policy.

## NATURE OF RIGGS' CLAIMS

1. UDS unlawfully interfered with Riggs' rights as protected by the FMLA by willfully failing to provide her with the requisite eligibility notice and rights and responsibilities notice.

2. UDS unlawfully interfered with Riggs' rights as protected by the FMLA by terminating her employment before the statutorily provided deadline to return her FMLA certification paperwork.

3. UDS unlawfully discriminated against Riggs by terminating her employment because she needed FMLA protected leave.

4. UDS unlawfully retaliated against Riggs by terminating her employment because she requested FMLA protected leave.

5. UDS unlawfully discriminated against Riggs by terminating her employment because of her disability in violation of the public policy of North Carolina.

6. UDS unlawfully discriminated against Riggs by failing to provide her a reasonable accommodation in violation of the public policy of North Carolina.

## THE PARTIES

7. Riggs is an adult individual who is a resident of Stallings, North Carolina.

8. UDS is a domestic corporation formed under the laws of North Carolina and registered and in good standing in the State of North Carolina, with its principal place of business located at 3000 Tilly Morris Road, Weddington, North Carolina 28104.

## JURISDICTION AND VENUE

9. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FMLA.

10. Riggs' wrongful discharge in violation of public policy claim is based on the law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of facts giving rise to Riggs' FMLA claims.

11. This Court has personal jurisdiction because UDS conducts substantial business in Union County, North Carolina, which is located within this judicial district.

12. Venue is proper in this judicial district because UDS has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Union County, North Carolina, which is located within this judicial district.

## COVERAGE ALLEGATIONS

13. At all relevant times, UDS has been an "employer" within the meaning of the FMLA, in that it employs fifty (50) or more employees in 20 or more workweeks, 29 U.S.C. § 2611(4).

14. At all relevant times, Riggs was an "eligible employee" within the meaning of the FMLA, in that UDS employed her for at least 12 months, and she performed at least 1,250 hours of service with UDS during the 12-month period preceding the termination of her employment, 29 U.S.C. § 2611(2).

## RIGGS' FACTUAL ALLEGATIONS

15. Riggs began her employment with UDS as a Third Grade Teacher in August 2023 before transitioning to a Second Grade Teacher.

16. Throughout her employment with UDS, Riggs met or exceeded UDS's legitimate employment expectations as evidence by positive performance evaluations that she received from her supervisors before her termination.

17. In early February 2025, Riggs discovered disturbing images and videos on her daughters' phones. Riggs also learned that her daughters had been inappropriately touched by their neighbor. The discovery of this information greatly disturbed Riggs, which triggered traumatic memories from her past. Riggs went into a manic state that required medical intervention.

**February 3, 2025:**

18. At 12:45 a.m., Riggs texted Dr. Dorothea Heath ("Dr. Heath"), R's Head of Lower School: "Are you awake?"

19. At 1:40 a.m., Riggs texted Dr. Heath: "I'm sorry for texting again almost ab hour later but when you wake up and get moving can you please call me?"

20. At 5:45 a.m., Riggs texted Dr. Heath:

I just tried calling but no answer….i can not get into details right now but I've been up all night long-we are have had a family emergency that I need to get taken care of and it cannot wait. It's extremely serious and involves my girls. I am taking them to school and then speaking to the guidance counselor at the elementary school then will head to middle school to talk to Emma's. Im sorry but I have got to get this taken care of before I can even phantom working.

21. At 5:28 a.m., Riggs texted Dr. Heath:

I am being as honest as I can be, I can't think straight to do sub plans or to put this into proliant right now but after I go to schools and figure out some other things I will but I don't even have sub plans but I'm cannot do it right now. I will email Cathy but that's as much as I can do right now. I did not expect anything like this and when it came about around 11 last night I wanted to call you but finally got my blood pressure down and stopped crying to text you after midnight[.]

22. At 6:41 a.m., Dr. Heath texted Riggs:

Don't worry about supplant you guys have slides. The good thing about slides are that those are your sub plans. Take care of your babies and put it in proliant soon as you can. I tried to call you back this morning but you probably finally got to sleep.

23. At 7:07 a.m., Dr. Heath texted Riggs: "Do you think you will need to take another day tomorrow?"

24. Riggs replied at 7:55 a.m., stating:

Yes and no. I probably should but I need to be there to keep my mind busy until other things are figured out before I know what else need to be done. Ther are a lot of uncertainties right now and lots more to figure out but I can't do it all in one day. This is going to take a little but of time so I think until I know more I need to work and if I need to leave early I'll do that.

25. Riggs followed up at 7:56 a.m., stating: "Does that make sense? I've been falling asleep typing that. I tried to do my lesson plans for next week and fell asleep so I won't have them done until tomorrow night when I can concentrated and after I get sleep. I'm sorry[.]"

26. Dr. Heath immediately replied, "No problem. Yes that makes sense. Get some rest. If you wake up and don't feel like you can come, just let me know[.]"

27. Riggs responded "I actually just climbed into bed. I need sleep. Emotionally physically and mentally exhausted like I never have been before[.]"

28. Riggs followed up at 7:57 a.m., "Thank you so much Dr. Heath, I appreciate you being here for me being so supportive[.]"

29. Dr. Heath immediately responded, "Absolutely."

**February 4, 2025:**

30. At 6:41 a.m., Dr. Heath texted Riggs, "Just checking to see if you think you should come. We can't cry in front of the kids so I wasn't sure if you thought you were ready? You ready girl?"

31. Riggs immediately replied, "L ll l bc[.]"

32. At 6:42 a.m., Dr. Heath responded, "This should even take your mins off if things[.]"

33. At 7:04 a.m., Riggs replied, "Omg (Oh my god) I didn't even know I responded at 6:42–I've overslept[.]"

34. At 7:05 a.m., Dr. Heath responded, "Lol (Laugh out loud). It's okay you need the rest." A few seconds later, Dr. Heath added, "Take your time. Don't rush."

35. At 7:06 a.m. Riggs responded, "I gotta get up quickly and get the kids to school. I'm so sorry! I'll start getting everyone up now and myself ready and try to be there about 8:30!"

36. At 8:03 a.m., Riggs texted Dr. Heath, "Just dropped the kids off at school. I'll be there in 15 minutes."

**February 5, 2025:**

37. At 6:33 a.m., Riggs texted Dr. Heath:

Dr. Heath, I just finished talking to my team. There was new Information brought to my attention yesterday afternoon (after all call) and I lost it. My team was there for me and helped me through a horrific panic attack. It was so bad that Kyle left work and came to the school to get me and wouldn't let me drive home. I ended up going back for my car around 8 pm.

38. At 6:35 a.m., Riggs texted Dr. Heath:

Anyways, mentally I can't be there today. I have got to get myself some help today and deal with this before I'm able to be there for these students. I'm so sorry. This is not what I wa expecting but after talking with my team they said they knew this before I did. I was just going to try to push through but after much consideration I don't feel I can.

39. At 7:31 a.m., Dr. Heath texted Riggs, "Please make sure you text Cathy. I hope you feel better." At 8:17 a.m., Dr. Heath texted Riggs, "Who did you have for character t and do you have your certificate in your room?"

40. At 8:19 .m., Riggs replied, "Lindsay and yes, it's on the white desk in the tiered metal tray. I also have Ajitesh in there from last month. You told me you'd include him in it this month."

41. At 8:20 a.m., Riggs added, "The tiered metal tray is against the wall on the white desk and I wanna say it's in the 3rd one down the certificate's are in."

42. At 7:36 p.m., Riggs text Dr. Heath, "I sent you an email back, it's really hard for me to talk right now without hysterically crying but if you need to call me you can[.]" In addition to texting Dr. Heath, Riggs emailed Rita Williams, Defendant's Director of Finance/Human Resources, informing her about the mental breakdown she was experiencing.

**February 8, 2025:**

43. At 9:19 p.m., Kyle Alfredson ("Alfredson"), Riggs's boyfriend, texted Dr. Heath, "Hey Dr. Heath this is Ellen's boyfriend kyle. Sorry for reach out to you so late. Can you give me a call when you have time to talk please."

**February 9, 2025:**

44. At noon, Dr. Heath texted Riggs:

> He Riggs. How are you doing today? Are there a certain number of days you know that you might need off and then I can Rita put it in proliant for you if you are not able to do so? What are your thoughts? Is there anything that we can support you with?

45. At 2:25 p.m., Dr. Heath texted Alfredson, stating, "Kyle can you tell Ellen to respond to the text I sent or call. Dr. Heath[.]"

46. At 2:36 p.m., Alfredson responded:

> Hey I relayed the message but Ellen is really not doing ok at all right now. I've never seen her like this. She hasn't been able to speak to anyone and it's been giving her severe anxiety attacks. She hasn't even been able to talk to her mother nor the kids today.

47. Alfredson added, "I will make sure she calls you or responds as soon as I can. I do know she had to shut her phone off because anybody reaching out to her and checking in has been giving her panic attacks and she just can't handle anything right now. I'm sorry[,]" at 2:37 p.m.

48. Dr. Heath replied at 3:14 p.m., stating, "Okay thank you for letting me know. I will go ahead and put in her absence." At 3:17 p.m., Dr. Heath added, "Kyle, she needs to see a doctor and soon. You do not want this to escalate to a potential dangerous situation for herself."

49. At 6:47 p.m., Dr. Heath texted Alfredson, "Hey Kyle. She is all set for work. But how is she doing? Have you talked to her family? What are they saying? Is anybody coming?"

50. At 8:12 p.m., Alfredson responded:

Honestly she isn't doing well at all. I've been talking with family and crisis lines and am very concerned. As of right now I'm going to be taking off of work some and her daughter Hannah is supposed to be coming this week. I appreciate your concern and thank you for being understanding.

51. At 8:17 p.m., Dr. Heath replied, "Kyle I know that if you are concerned that she could harm herself, you could check her in and I think they do a 48 hour hold to make sure the person is ok or follow the directions from the crisis line."

52. At 10:11 p.m., Riggs responded to Dr. Heath:

Hi Dr. Heath. Are you awake? I just turned my phone back on. I couldn't handle having my phone on today. Just turned it on to check emails but honestly it's giving me more anxiety so if your sleeping I'm going to turn it back off but if your awake I can chat bc (because) clearly I can't sleep.

**February 10, 2025:**

53. At 7:49 a.m., Dr. Heath texted Riggs, "Make sure you put your information in proliant and I hope you begin to feel better soon." A few seconds later, Dr. Heath added, "Also any doctor's note you might have, send that as well."

**February 11, 2025:**

54. At 8:50 p.m., Dr. Heath texted Alfredson, "Hi Kyle, How is Ellen doing?"

55. At 9:00 p.m., Alfredson replied, "Hey I meant to let you know it's been very hectic with everything going on and I forgot to text you earlier. Ellen has been admitted into a behavioral mental hospital for the time being."

56. Two minutes later, Alfredson added, "Best place for her to be right now with considering everything that's happened. She is safe and just waiting to hear from them tomorrow."

57. At 9:15 p.m., Dr. Heath replied, "Thanks for letting me know. How are the kids?"

**February 12, 2025:**

58. At 6:50 a.m., Alfredson texted Dr. Heath, "Kids are fine. Her daughter Hannah drove down and has been staying with her boyfriend but is coming here to hang out with her siblings and just help out some with them."

59. At 1:53 p.m., Alfredson texted Dr. Heath:

Hey dr heath, I took Ellen and her daughter Emma to urgent care earlier this week. Emma had the flu and Ellen. I brought her to the doctor because I was concerned. Do you need me to send you the check out paperwork from urgent care for Ellen or Doctor note?

60. Riggs also received a letter from Joely Lord ("Lord"), UDS's Executive Director, which states:

Dear Ellen,

We understand from your boyfriend, Kyle, that you are currently in an in-patient facility. While we appreciate Kyle keeping us informed, all future communications do need to come directly from you.

I am writing to address your current leave status, and the next steps required to ensure compliance with Union Day School policies and applicable leave regulations, including the Family and Medical Leave Act (FMLA).

As of February 6, 2025, our records indicate that you have exhausted all your paid leave available under company policy. If you require continued leave, it is essential that you let us know by February 20, 2025. I have attached a Notice of Eligibility & Rights and Responsibilities for your reference. If you are requesting FMLA leave, I have also attached a Certification of Health Care Provider that will also need to be returned to our office by February 27, 2025. This documentation will help us evaluate your eligibility for any additional leave under the FMLA or other applicable laws.

Failure to return to work or complete your responsibilities may result in disciplinary action, up to and including termination, in accordance with Union Day School policies.

Please be assured that Union Day School values your contributions and seeks to support you during this time. If there are circumstances preventing you from submitting the requested documentation or returning to work, I encourage you to contact Rita Williams at [email redacted for privacy reasons] as soon as possible.

Thank you for your prompt attention to this matter. We look forward to hearing from you and resolving this situation in a way that supports both your needs and the needs of the school.

**February 13, 2025:**

61. At 5:04 p.m., and in direct contradiction to Lord's letter, Dr. Heath texted Alfredson, "Hey Kyle. Any updates on Ellen?"

62. Alfredson responded at 5:06 p.m. stating:

Yeah, she was transferred from the observe it hospital that she's admitted to to the hospital where she's going to begin treatment. She's very, very upset and nervous with being around the people she's around at these places and deal with all this. But as much as I know right now, she has not been able to have much contact here with me.

63. Dr. Heath responded at 5:18 p.m., stating "Yes I had a sister who was admitted and you go to a lot of group services, they work on getting the right medical dosage but it's not a fun place." Dr. Heath added "Did she have a choice? Do they do outpatient or did they say she needed in patient?" about a minute later.

64. Alfredson responded at 6:19 p.m., "No, the psychiatrist had made the decision and admitted her. They will continue to keep her there until the psychiatrist feels that she is ready to leave."

**February 17, 2025:**

65. At 7:07 a.m., Dr. Heath texted Riggs, "How are you doing?"

**February 25, 2025:**

66. Riggs received another letter from Lord. The February 25, 2025 letter states:

Dear Ellen,

This letter serves to formally notify you that your employment with Union Day School is terminated, effective February 25, 2025, due to your failure to properly request absence of leave, and failure to provide the necessary documentation to qualify for Family and Medical Leave Act (FMLA) leave regarding your recent absence from work.

Please return all company property to Rita Williams by March 3rd, 2025.

While you have exhausted your 80 hours of PTO, the Board of Directors has authorized me a severance pay equal to one month's salary. This severance payment will be paid on our next regular payroll, March 14, 2025.

You and UDS agree to keep confidential, and to not disclose, the existence and substance of this agreement. Nothing in this agreement, however, will prevent either party from disclosing the terms of this agreement to the extent required by law. As part of this agreement, you agree that you will not, at any time, make any negative or disparaging remarks, comments, or statements regarding UDS or any of its employees, agents, officers, or directors. UDS agrees that it shall cause its officers and directors to refrain from making any negative or disparaging remarks, comments, or statement concerning you, whether directly or indirectly, to any of its employees or any third parties.

In consideration of this agreement, you agree to release and discharge UDS, as well as its employees, agents, officers, and directors, (together, the "UDS Released Parties") from any and all claims you may have against the Released Parties, including any and all claims arising out of your employment with UDS or the Employment Agreement, including, but not limited to, any claims under the Age Discrimination in Employment Act of 1967, as amended, and any applicable rules or regulations promulgated thereunder.

If you have any questions regarding this termination, please contact Rita Williams at [phone number redacted for privacy reasons].

## RIGGS' FIRST CAUSE OF ACTION
### (Violations of the FMLA – Interference (Requisite Notice))

67.  Riggs realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

68. Under the FMLA, an employer is required to provide an employee with eligibility, rights and responsibilities, and designation notices and request that the employee complete FMLA certification paperwork at the time the employee gives the employer notice of the need for leave or within five business days thereafter.

69. UDS knew or should have known that Riggs required FMLA leave for her serious health condition as early as February 4, 2025.

70. UDS willfully interfered with Riggs' rights under the FMLA by failing to provide the requisite notices to Riggs and the FMLA certification paperwork within the statutorily required timeframe.

71. UDS's failure to give Riggs the requisite notices and certification paperwork caused her to suffer prejudice because she could have applied for and completed the FMLA certification paperwork before being admitted to the behavioral mental hospital.

72. As a direct and proximate result of UDS's unlawful interference in violation of the FMLA, Riggs has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, lost past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

## RIGGS' SECOND CAUSE OF ACTION
### (Violation of the FMLA – Interference (Caretaker Communication))

73. Riggs realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

74. Although an employee is required to give an employer notice of their need for FMLA leave, the FMLA permits a caretaker to communicate with the employer on the employee's behalf.

75. UDS knew or should have known that Riggs could not communicate with UDS regarding her need for FMLA leave as early as February 11, 2025, when Alfredson gave Dr. Heath notice that she had been admitted to the behavioral mental hospital.

76. It is common knowledge—and as outlined below, information that Dr. Heath intimately knows—that individuals admitted to behavioral mental hospitals must surrender their personal belongings, including their cellphones upon admission.

77. UDS's requirement that Riggs be the only party who communicates with UDS constitutes FMLA interference.

78. UDS's interference with Riggs' FMLA rights caused her to suffer prejudice namely because UDS would not allow Riggs' caretaker, Alfredson, to complete the FMLA paperwork and return it on her behalf.

79. As a direct and proximate result of UDS's unlawful interference in violation of the FMLA, Riggs has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, lost past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

**RIGGS' THIRD CAUSE OF ACTION**
**(Violations of the FMLA – Interference (Termination))**

80. Riggs realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

81. Under the FMLA, an employee must complete and return FMLA certification paperwork within fifteen (15) calendar days unless it is impracticable under the particular circumstances despite the employee's diligent, good faith efforts.

82. At a minimum, Riggs was required to return the completed FMLA certification paperwork by February 27, 2025.

83. UDS unlawfully terminated Riggs' employment before the statutorily required fifteen (15) day deadline to complete the FMLA certification paperwork expired.

84. Through legal counsel as well as industry experience and custom, UDS possessed ample access to the FMLA's regulations and statutory provisions requiring an employer to provide at least fifteen (15) days to complete and return FMLA paperwork, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. UDS therefore knew about the FMLA's requirements or acted in reckless disregard as to its obligations under the FMLA. Accordingly, UDS's actions were deliberate and willful within the meaning of the FMLA.

85. As a direct and proximate result of UDS's unlawful interference in violation of the FMLA, Riggs has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, lost past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

### RIGGS' FOURTH CAUSE OF ACTION
**(Violations of the FMLA – Retaliation)**

86. Riggs realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

87. Riggs' fourth cause of action arises from UDS's unlawful termination of her employment because she attempted to utilize protected FMLA leave to care for her serious health condition.

88. As a direct and proximate result of UDS's unlawful retaliation in violation of the FMLA, Riggs has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, lost past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

89. UDS's actions were intentional, willful, and/or undertaken in reckless disregard of Riggs' rights as protected by the FMLA.

## RIGGS' FIFTH CAUSE OF ACTION
**(Wrongful Discharge in Violation of Public Policy on the Basis of Disability)**

90. Riggs realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

91. The public policy of the State of North Carolina as set forth in N.C.G.S. § 168A *et seq.*, North Carolina's Persons With Disabilities Protection Act, prohibits employers from discriminating against employees on the basis of their disability. Riggs is disabled and is therefore a member of a protected class. This is specifically established in N.C. Gen. Stat. § 168A *et seq.*

92. UDS violated the public policy of North Carolina as set forth in N.C.G.S. § 168A *et seq.*, by terminating Riggs, a member of the protected class, on the basis of her disability.

93. As a proximate and foreseeable result of UDS's conduct, Riggs has suffered lost back and future wages and benefits, expenses, and other damages, which she seeks from UDS.

94. UDS's actions were done maliciously, willfully, or wantonly or in a manner that demonstrates a reckless disregard for Riggs' rights. As a result of UDS's conduct, Riggs is entitled to recover punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Riggs respectfully requests the following relief:

a) An Order pursuant to the FMLA and North Carolina law requiring UDS to pay Riggs all lost wages, benefits, compensation, and monetary loss suffered because of UDS's unlawful actions;

b) An Order pursuant to the FMLA ordering UDS to pay liquidated damages;

c) An Order pursuant to North Carolina law requiring UDS to pay Riggs compensatory damages;

d) An Order pursuant to North Carolina law requiring UDS to pay Riggs punitive damages;

e) An Order awarding the costs of this action;

f) An Order awarding reasonable attorneys' fees;

g) A Declaration and finding by the Court that Defendant willfully violated provisions of the FMLA for the unlawful interference;

h) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

i) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEAMAND

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted,

/s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
6135 Park South Drive, Suite 510
Charlotte, NC 28210
Telephone: (704) 612-0038
Facsimile: (704) 612-0038
Email: phil@gibbonslg.com
corey@gibbonslg.com

*Attorneys for Plaintiff*